No. 64.—STATE OF LOUISIANA *v.* J. C. GREGOR.

21  473
46  627

21  473
109  351

Declarations or threats of the deceased towards the accused, in order to constitute a part of the *res gestæ*, must be made at the time of the act done which they are supposed to characterize, and so to harmonize with it as to constitute one transaction.

Declarations by the deceased to a witness, towards the accused, made before the homicide and not communicated to the accused, do not form a part of the *res gestæ*, and are therefore inadmissible on that ground.

Declarations or threats made to third parties by the deceased towards the accused before the homicide, are not admissible without first showing that they were communicated to the accused beiore the killing

The order of the District Judge overruling a motion for a new trial in a criminal case on the affidavit of newly discovered evidence, presents the question of diligence, and not an unmixed question of law, and cannot be reviewed on appeal.  Constitution, art. 74; 11 A. 478.

APPEAL from the First District Court for the parish of Orleans. *Abell*, J.  *S Belden*, Attorney General, for the State, *A. P. Field*, for defendant and appellant.

HOWELL, J.  The defendant was indicted for the murder of John Collins on the seventeenth day of February, 1869, was tried and convicted of manslaughter, and has appealed to this court.

The first question is presented by a bill of exceptions, which we transcribe at length, to wit:

"Be it remembered that on the trial of the above cause, to wit: on the thirtieth day of March, 1869, the Attorney General, on the part of the State, introduced George L. Richardson, who was sworn and testified in chief substantially as follows, to wit: witness knew the deceased and the accused.  The deceased was first, and the accused second mate of the steamboat Governor Allen.  Early in the morning of the homicide at the steamboat Governor Allen, the deceased walked up to the accused and remarked to him, 'I can or intend to run this machine myself, and I have no further use for your services;' to which the accused replied, 'all right.'  About fifteen minutes before the homicide the witness conversed with the deceased a few moments. Deceased left witness and crossed the levee in the direction of the city.  A few moments before he heard the shot fired, witness started aboard of the boat, met the accused coming off with a colored man behind him, with a carpet bag of the accused.  He bid witness good bye and said, 'I will see you to-morrow.'  At that time he saw the deceased about one hundred yards off, crossing the levee coming towards the boat and as witness reached the boiler deck of the boat he heard a shot fired, and he immediately went back on the wharf, saw the deceased lying down.  I went to him, raised him up and found him in a dying condition; and that a colored man handed me a dirk knife, resembling the one in court, that was said was found by the side of the deceased.

"Upon cross examination the said witness testified that the deceased, in the conversation with witness, about fifteen minutes before the homicide, and just before he left witness and crossed the levee in the

direction of the city, asked the witness for a pistol; the witness informed him he had none; he then asked witness where he could get one; witness referred to a person from whom he thought he could obtain one. Deceased asked witness if he had a knife, and remarked that he would sooner depend upon a good knife than a pistol. The counsel then asked this witness what the deceased said he wanted the arms for, and whether the deceased did not say at that time that he intended to kill the accused before he left the boat. To the question and the answering the same the Attorney General objected, for the reason that before such proof could be made by the defendant, it must be shown that the threat made and the use he intended to make of the weapons he called on witness to obtain, must first be shown had been communicated to the accused before the homicide took place. Which objection of the Attorney General the court sustained, and refused the question and answer. To this opinion of the court in refusing the question and answer the defendant by his counsel excepts, for the reason that the conversation with the witness by deceased was but a short time before the homicide was committed—fifteen minutes as witness stated, and was therefore admissible as a part of the *res gestæ*, going to explain the motives and subsequent acts of the deceased, and upon the further ground that the testimony was important for the defense, if answered in the affirmative, to show the motives and intentions of the deceased towards the accused, and was a part of the circumstances of the case to explain the motives and intentions of the deceased towards the accused."

The evidence sought to be introduced is hearsay, and if admissible, must come within the exceptions to the general rule excluding hearsay evidence.

The defendant contends—*first*, that it is a part of the *res gestæ*, and therefore within the exceptions—and *secondly*, that it tends to establish the design and intention of the deceased to kill the defendant.

*First*—"To be a part of the *res gestæ*, the declarations must have been made at the time of the act done which they are supposed to characterize, and well calculated to unfold the nature and quality of the facts they are intended to explain, and so to harmonize with them as obviously to constitute one transaction." 3 Phil. on Ev. p. 585; N. 444.

The facts stated in the bill of exceptions do not bring the proposed evidence within this definition. The declarations of the deceased to the witness were not made at the time of the homicide, the *res gestæ* of which they are supposed to characterize, and no facts are stated as occurring at the time of the killing, the nature and quality of which they are intended to explain and with which they so harmonize as obviously to constitute one transaction. Nor is any connection shown between the interview, early in the morning, when the defendant was

informed that his services were no longer needed, and the subsequent killing, so as to make them (the interview and the killing) and the intervening incidents or the acts of the parties one continuous transaction. What occurred at said interview may be considered a business matter, of which the defendant made no complaint, and no quarrel or grudge between them is shown, nothing to induce the defendant to anticipate or apprehend an attack from the deceased. What the latter may have said to the witness as to his intentions was therefore not a part of what occurred at the time of the killing, the *res gestæ*, and not on that account admissible.

*Second*—If this be so, it is difficult to see how the excluded evidence is admissible to establish the design and intention of the deceased to kill the defendant, for it would seem that to be admissible for such a purpose, it must be a part of the *res gestæ*. But counsel has cited authority to the effect that, "in the prosecution of a crime so essentially the creature of intent, as murder, everything pertinent should be submitted to the jury upon which they may infer the absence of malice" (19 Wendell, 591); and that "it is admissible for the defendant to show threats or other circumstances of a recent character, which would tend to make a man of his character believe that his life was in danger." Wharton's Homicide, 217.

But to be pertinent, or to make him believe that his life was in danger, the threats or felonious intent of the party killed, expressed only to third persons, must certainly have been communicated and known to the defendant. If not known to him they could have had no influence upon him in committing the homicide, and were therefore irrelevant.

It has been well said that the evidence to show the felonious intent of the party killed "must be gauged by the defendant's opportunities at the time." Wharton's Homicide, p. 215.

In this case the defendant is not shown to have had an opportunity at the time of or prior to the killing, to know that the deceased had made threats to the witness to kill him. The objection was therefore well taken, and the evidence properly excluded.

The next question is that the District Court erred in overruling the motion for a new trial upon the affidavit of newly discovered evidence, as the affidavit and the facts set forth were not contradicted, but in law were taken to be true. We are not referred to any authority, and we know of none to sustain this legal proposition, and as a question of diligence and not an unmixed question of law is involved, the action of the District Court on the motion for a new trial cannot be reviewed on appeal. 11 A. 478.

It is therefore ordered that the judgment appealed from be affirmed with costs.

*Mr. Justice* TALIAFERRO *dissenting:*

With some hesitancy I dissent from the opinion of the majority of the court. I do not think that to constitute the menacing language alleged to have been used by the deceased a part of the *res gestæ,* it is necessary that it be shown that the accused knew of it before the commission of the homicide. In my view the evidence should be admitted, in order that the jury might, in connection with all the evidence, determine whether it be entitled to any consideration in making up their verdict.