## THE STATE v. ELLIOTT.

1. **Criminal Law**: PRACTICE: JURY.   Where a challenge to a juror for cause was overruled, and the defendant who had not exhausted his peremptory challenges failed to challenge the juror peremptorily, the ruling of the court upon the challenge for cause, if erroneous, was error without prejudice.

2. ———: EVIDENCE: DYING DECLARATIONS.   It is the province of the court to determine the competency of what are offered as dying declarations, but evidence tending to show whether or not the testimony offered is of the character it purports to be is admissible for the enlightenment of the court.

3. ———: ———.   Proof that the deceased was a materialist could not be received to affect the admissibility of his dying declarations.

4. ———: ———: ———.   Such proof, however, is competent for the purpose of assailing the credibility of the witness and lessening the weight of his dying declarations.

5. ———: ———: AFFIDAVIT.   An affidavit not in the language given by the deceased to the party who drew it, and not read over to him after being written out, is not admissible.

6. ———: ———: THREATS.   Evidence of threats made by deceased against the defendant and not communicated to him, is not admissible.   To this rule the only exception occurs where violent threats are made by the deceased a short time before the occurrence, and the question arises whether or not the defendant perpetrated the act in self-defense.

*Appeal from Dallas District Court.*

WEDNESDAY, APRIL 4.

THE defendant was indicted for the murder of John W. Bold, was tried, convicted of murder in the second degree, and sentenced to the penitentiary for twelve years.   He appeals. The material facts appear in the opinion.

*E. Willard, R. B. Parrott* and *T. R. North*, for the appellant.

*M. E. Cutts, Attorney General*, for the State.

DAY, CH. J.—I.   Three persons called as jurors, Slaughter, Chance and Wright, were, upon their examination as to their

qualifications as jurors, challenged for cause by the defendant.
1. CRIMINAL The challenge was overruled. The abstract shows
law: practice:
jury. that Slaughter and Chance were challenged per-
emptorily. The abstract does not show that Wright was
so challenged, and it does not appear whether or not he served
upon the jury, but the jury was accepted by the defendant
without exhausting the peremptory challenges to which he
was entitled. If, then, Wright was allowed to serve upon the
jury, it was by the defendant's voluntary act. If the ruling
of the court in overruling the challenges for cause was error,
it was error without prejudice. If defendant had exhausted
all his peremptory challenges a very different question would
be presented. *State v. Davis*, 41 Iowa, 311.

II. No person was present at the time the wound was
inflicted upon Bold, of which he subsequently died. The
2. ——: evi- principal evidence against the defendant consists
dence: dying
declarations. in the dying declarations of deceased. The State
introduced T. J. Caldwell, a surgeon who was called to attend
Bold. He testified as to his condition and his belief that his
dissolution was approaching. He was then asked to state
what Bold said in regard to who shot him, or who inflicted
the wound on him. The defendant objected, and then offered
to prove to the court by competent testimony that at the time
of making the declaration the deceased did not believe that he
was about to die, but expected to recover from the wound;
and the defendant asked the court to be permitted, at this
stage of the proceeding, to introduce his evidence touching
the matters made in his offer, for the purpose of testing the
competency of the declarations of deceased. The court refused
to admit this testimony, and permitted the declarations of
deceased to be introduced. In this action we think the court
erred. It is the province of the court to determine the com-
petency of the declaration offered. In Greenleaf on Evidence,
section 160, it is said: "The circumstances under which the
declarations were made are to be shown to the judge; it being
his province, and not that of the jury, to determine whether
they are admissible." The cases uniformly hold that the
competency of such testimony is to be determined by the

judge, in view of all the surrounding and attendant circumstances. *McDaniel v. The State*, 8 Sm. & M.: 401; *Hill v. The Commonwealth*, 2 Gratt., 594; *Commonwealth v. Williams*, 2 Ashm., 69; *Rex v. Spilsbury*, 7 C. & P., 187; *Rex v. Bonner*, 6 C. &. P., 386; *Rex v. Hucks*, 1 Stark. Rep., 521.

The court does not discharge this duty by simply hearing the evidence produced upon the part of the State. Evidence, if offered, should be received upon the part of the defendant, and it should be weighed upon the determination of the question of admissibility. The declarations of a dying man are admitted on a supposition that in his awful situation, on the confines of a future world, he had no motive to misrepresent, but, on the contrary, the strongest motives to speak without disguise and without malice. Roscoe's Criminal Evidence, p. 35. Before the judge decides the question of admissibility he hears all the deceased said respecting the danger in which he considered himself, and he should be satisfied that the declaration was made under an impression of almost immediate dissolution. It is not enough that the deceased thinks he shall ultimately never recover. Phillips on Evidence, Cowen & Hill's notes, part 1, page 252. In the same volume it is said, page 253: "We see that competency is a question of fact for the court, as in other cases. They are to find upon it as the jury do upon the main case, taking into view all the circumstances calculated to prove and disprove that despair of life which shall be equivalent to a sworn obligation." And upon page 254, it is said: "Upon this question of fact no rule can be adopted which will reach every variety of detail. The court try the competency of the deceased as the jury do his credibility; and the decision in either case on a conflict of testimony must be final." We are satisfied that the court ought to have inquired into all the circumstances attending the declarations, and to have heard the testimony offered by the defendant, before determining that the declarations were competent, and permitting them to go to the jury.

III.  The defendant offered to prove, as affecting the admissibility of the declarations of deceased, that he was a materi-

alist, and that he believed in no God or future conscious existence. The proposed proof was not competent 3. —: —. for the purpose of affecting the admissibility of the dying declarations. If Bold had been alive he would have been a competent witness, although a disbeliever in God and a future state. Every human being of sufficient capacity to understand the obligation of an oath is a competent witness in this State. Code, § 3636.

IV. The defendant, however, when he came to make out his defense, offered to prove the foregoing facts as affecting 4. —: —: the credibility of the declarations of deceased, and —. the evidence was not admitted for this purpose. In this there was error. Under the common law persons insensible to the obligation of an oath from defect of religious sentiment and belief were incompetent to testify as witnesses. The very nature of an oath presupposes that the witness believes in the existence of an Omniscient Supreme Being, the rewarder of truth and avenger of falsehood. Atheists, therefore, and all infidels, that is, all those who profess no religion that can bind their consciences to speak truth, are, at common law, rejected as incompetent to testify. 1 Greenleaf, Sec. 368. Our Code, section 3637, provides: "Facts which have heretofore caused the exclusion of testimony may still be shown for the purpose of lessening its credibility." If Bold had been offered as a witness it is very clear that the proposed proof would have been competent for the purpose of affecting his credibility.

But dying declarations are open to direct contradiction in the same manner as any other part of the case for the prosecution, and the prisoner is at liberty to prove that the deceased was not of such a character as was likely to be impressed with a religious sense of his approaching dissolution, and that no reliance is to be placed on his dying declarations. Roscoe's Criminal Evidence, p. 35.

V. Against the objection of defendant, the court permitted an affidavit made by John N. Bold, before Lemuel Warford, a justice of the peace, to be offered in evidence. The evidence shows that Bold gave

5. —: —: affidavit.

Warford the substance of the affidavit, and Warford shaped it. About two-thirds of it is in the language of Bold, and the balance is in the language of Warford. It was not read over to Bold after he signed it. As the statement was neither in the language of deceased nor read over to him before he signed it, we think it was inadmissible.

VI. The court rejected proof offered by defendant tending to show that Bold had poisoned defendant's flour, attempting thereby to poison defendant and his family. We think there was no error in rejecting this testimony.

VII. The court refused to permit defendant to prove acts and conduct of defendant showing that he was very much afraid of Bold, and sought to get away from and avoid him. There was no error in this ruling.

VIII. Evidence of threats made by deceased against the defendant, but not communicated to defendant, was rejected.

6. ——: ——: threats. There was proof of threats, however, which were communicated, which brings the case fully within the principle of *State v. Woodson*, 41 Iowa, 424, and renders the ruling, if erroneous, error without prejudice. But as the question will probably arise upon the re-trial we deem it proper to determine it now. The decided weight of authority holds that threats uncommunicated are inadmissible. See *Com. v. Frengan*, 44 Penn., 586; *Newcomb v. State*, 37 Miss., 383; *Powell v. State*, 19 Ala., 577; *Coker v. State*, 20 Ark., 53; *Atkins v. State*, 16 Ark., 568; *Gingo v. State*, 29 Geo., 470; *State v. Dumphey*, 4 Minn., 438; *State v. Gregor*, 21 La. Ann., 473; *State v. Jackson*, 17 Miss., 544.

The only exception to the rule seems to be that, where evidence had been given making it a question whether the defendant had perpetrated the act in defense of his person against an attempt to murder him, or inflict some great bodily harm upon him, violent threats made by deceased against the defendant a short time before the occurrence may be proved, though not communicated. *Stokes v. The People*, 53 N. Y., 164. The threats offered to be proved in this case do not fall within this principle. We think they were properly rejected.

IX. The defendant asked fifty-three instructions, all of which were refused. The court gave thirty-five instructions. Many objections are urged to the instructions given, and to the refusal to give those asked. It would extend this opinion to an undesirable length were we to take up and consider *seriatim* all these objections. The charge of the court is very full, clear and explicit, and, taken together, very fairly presents the law of the case. If any portion of it fails to sufficiently qualify or extend the doctrines presented, it is likely that the learned judge who tried the case will himself make the proper corrections upon the re-trial.

For the errors discussed the judgment is

REVERSED.