Territory of New Mexico v. Young et al.

I adopted the rule in this case in the second judicial district, because I was assured by experienced attorneys that it had long been the practice in this territory, and because I believed it to be right in principle and sometimes necessary, as in this case, to vindicate the authority of the court.

If New Mexico were a state, this question should be examined and decided upon its merits.

As it is, I can only acquiesce in the decision of a majority of this court.

THE TERRITORY OF NEW MEXICO, Appellee, v. WILLIAM YOUNG ET AL., Appellants.

*January 24, 1881.*

GRAND JURY. (1) *Prisoner need not be brought into court when grand jury impanelled in order to challenge.*

PETIT JURY. (2) *Jurors need not be absolute "owners" of fee of real estate.*

SAME. (3) *Erroneous acceptance of juror cured by peremptory challenge.*

MURDER. (4) *Instruction held not a comment by judge upon weight of evidence: Instruction as to degree.*

1. Under the statute (sec. 3, Act February 7, 1854) providing that a person held to answer a charge "may challenge the panel of the grand jury, or an individual grand juror," it is not necessary to bring persons accused of crime, and incarcerated in jail, into court at the time of impanelling the grand jury to enable them to exercise such right of challenge, and a failure to do so will not invalidate an indictment.

2. Under the law requiring a juror to be the "owner" of real estate, it is not necessary that jurors shall be absolute owners of the fee. The statute is to be construed liberally, and the requirement of ownership is met, if the juror be in possession of, or have a qualified interest in real estate.

3. An error of the court in refusing to exclude a person from the jury, upon the ground of non-citizenship, is cured by the party objecting to such juror, peremptorily challenging him.

4. In a murder case a statement by the judge to the jury that "there is no evidence before you tending to show that the killing of Henry

F. Dwenger is murder in any other degree than the first degree of murder" is not erroneous, as being a comment by the judge upon the weight of the evidence before the jury. It is a statement that there is no evidence; but if, in fact, there was evidence of the kind named, such a statement would be erroneous, and it is not improper for the judge to designate the degree of murder which the evidence shows was committed.

Appeal from the Third Judicial District, Doña Ana county, Bristol, J.

The facts appear in the opinion of the court.

*Edward V. Price*, for appellant.

The first point complained of by the defendant in this case is: That being incarcerated in the county jail at the time of the impanelling of the grand jury, and not having been produced in court, he was thereby deprived of his statutory right of challenging that body. See Compiled Laws of New Mexico, chapter 69, page 500, sec. 3.

Where a person is held to answer to an indictment in a capital case (the same not being bailable), it is the duty of the prosecutor to produce said person in court, before the grand jury is sworn, in order that he may have an opportunity to view said body and interpose his challenges, if any he may have, and the defendant can no more waive this statutory right, than any other statutory or common-law right, in a capital case, unless he is produced in court and given an opportunity to assert his right.

The second cause of complaint is, that the court should have sustained the challenge to Albino Samanego interposed by the defendant, on the ground that he was not the owner of real estate, one of the qualifications of a petit juror prescribed by the act of the legislature of 1879, 1880. The evidence which has been preserved by a bill of exceptions, and now on file in this court, shows conclusively that the proposed juror was at the time of challenge only a squatter on the public domain, and not the " owner" of the land he pro-

fessed to occupy according to the true legal signification of the word "owner."

Mr. Bouvier, in his Law Dictionary, defines the word "owner," thus: "The owner is he who has dominion of a thing real or personal * * * which he has the right to enjoy and to do with as he pleases, even to spoil or destroy it."

"The right of the owner is more extended than of him who has only the use of the thing. * * * He may commit what would be considered waste if done by another:" 2 Bou. Dict., p. 276, ed. 1860.

It has been repeatedly decided by the supreme court of the United States, that the *status* of a squatter simply, on public lands, is that of a tenant by sufferance only.

The third error complained of is—that the challenge to the competency of Pedro Provencio, on the ground that he was not a citizen of the United States, should have been sustained. It was and probably will be maintained by the territory that the father of the proposed juror became a citizen by force of Article V. of the treaty proclaimed June 30th, A. D. 1854, and commonly known as the Gadsden treaty, to be found on page 503 of the Revised Statutes of the United States relating to the "District of Columbia, post-roads and public treaties." But the territory should have shown affirmatively, that the father of the juror had not under the provisions of Articles VII. and VIII. of the treaty Guadalupe Hidalgo, "within one year made his election to retain the title and rights of a Mexican citizen," or that he had remained without making his election for one year next succeeding the date of the exchange of ratifications of the Gadsden treaty, to wit, the 30th day of June, A. D. 1854, within the ceded territory. See Articles VII. and VIII., Guadalupe Hidalgo treaty, pp. 495–6; Same, Revised Statutes.

The fourth cause of complaint consists in the court's re-

fusal to permit the defendant to prove and offer in evidence the verdict of the jury on the trial of William Dwenger, the principal of the first degree.

And it is maintained that it is illogical and contrary to sound reason to suppose that a person whom the evidence points out to be guilty (if at all) of only being present, aiding, abetting, etc., a principal in the second degree, can be guilty of any grade of the offense higher than the principal of the first degree.

Fifth—The court exceeded its power and authority in instructing the jury that their verdict should be " guilty of murder in the first degree, or not guilty."

The laws of this territory provide, that " all issues of fact in a criminal case shall be tried by a jury, who shall assess the punishment in their verdict and the court shall render judgment accordingly : " Compiled Laws of N. M., sec. 22, page 372. What particular issues of fact were involved in the trial of the case at bar ? I answer : 1st. The *corpus delicti*—that a human being had been unlawfully killed by the hand of another. 2d. Whether or not the defendant had been instrumental in producing the death. 3d. If he was, then what were the circumstances attending the commission of the crime ; and this clearly involves in the case at bar, the necessity of ascertaining as a conclusive effect, the particular degree of which the defendant is guilty (if at all), and why ?—for the plainest reason in the world, viz.: That it would be an absolute impossibility for the jury to "assess the punishment" until they had first ascertained the degree of the crime charged. See *State v. Kirkland*, 14 Rich. (S. C.), 230 ; 5 Ga., 441 ; 10 Ga., 101 ; 12 Wright (Penn.), 396 ; 29 Ga., 594 ; *Beaudien v. State*, 8 Ohio State, 634 (marginal page).

Sixth—It is also maintained by the defense that the defendent's motion for a new trial was improperly overruled by the court.

1st. Because the evidence in the case clearly establishes the fact that the defendant, if guilty at all, is guilty of having been an accessory after the fact only; a fact of itself that is fatal to the verdict.

It follows then, the jury being satisfied that the defendant was guilty of some grade of the offense, were compelled by the instruction of the court either to convict of a higher grade of crime than the evidence warranted, or accept the other horn of the dilemma and turn a man loose that had clearly violated the laws of his country.

And here it also follows, that the verdict is contrary to law, being evidently based upon a misconceived statement of the law governing the case. See same cases last above cited.

*S. B. Newcomb*, for appellee.

The first point made by defendant is not well taken.

That before a grand jury can be impanelled all the prisoners in the county jail must be brought into court and given an opportunity to challenge that body, is certainly a novel proposition.

We have no statute commanding this, and certainly it has never been the practice in this or any other country.

The right to challenge a grand jury is denied by " Joy on Challenge to Jurors," and other English authorities, but it is recognized generally in America.

Mr. Proffatt, in his work on Jury Trial, cites but one case where a prisoner was brought into court that he might have his challenges, but that was a case where the state was allowed to challenge in the first instance.

The question raised by the second ground of error is of great importance in this country (although, as we shall hereafter show, it can have no weight in this case) from the fact that in some counties, at least, nearly all the owners or occupiers of the land, hold by the same tenure as the juror Samanego ; they have no title to their lands beyond a mere

possessory one—and should the court hold that insufficient, the result will be enough jurors cannot be had in many counties to try a capital case.

We think all the legislature intended by the words "owner of real estate" was, that a man should be in possession of land, cultivating and occupying it, holding it by a title good as against every one except the government.

If this legislature intended a juror should hold his lands in fee simple it would have so declared.

As to the juror Provencio, mentioned in the third ground of error, we think the evidence shows conclusively that he is a citizen of the United States, but whether he is, or is not, is not at all material to this case.

The defendant absolutely waived his right to object to the rulings of the court, as to both of these jurors, by peremptorily challenging them.

. The defendant did not exhaust all his peremptory challenges, having challenged but eight jurors peremptorily. See *Stewart v. State*, 13 Ark., 720; *McGowan v. State*, 9 Yerger, 184; *Freeman v. People*, 4 Denio, 61; *Carroll v. State*, 3 Humph., 315; *Whalen v. Queen*, Q. B. Canada; *State v. Elliott*, (45 Iowa) 2 Am. Crim. Law Repts., 322; *Erwin v. State*, *Id.*, 251, 423.

PRINCE, Chief Justice: This is an appeal from a judgment of the third district court, sitting in the county of Doña Ana.

The defendant was indicted, together with Dora Dwenger and William H. Dwenger, at the July (1879) term, in Grant county, for the murder of Henry F. Dwenger.

Defendant demanded a separate trial, and also moved for a change of venue to another county, both of which were granted, and the venue changed to the county of Doña Ana. Before the change of venue, the defendant moved to quash the indictment, which motion was denied, and the defendant

excepted. The trial took place at the April (1880) term in Doña Ana county.

In the selection of jurors, the defendant challenged Albino Samanego, on the ground that he was not an owner of real estate. The court overruled such challenge, and the defendant excepted. Thereafter the defendant peremptorily challenged said proposed juror. The defendant also challenged Pedro Provencio, on the ground that he was not a citizen of the United States. The court overruled such challenge, and the defendant excepted; thereafter the defendant peremptorily challenged said proposed juror. The defendant used eight only of the twelve peremptory challenges, to which he was entitled.

After the delivery of the judge's charge, and before the jury retired, the defendant duly excepted to certain specified parts of said charge.

After the rendition of the verdict, the defendant moved the court to set aside the verdict, and grant a new trial, which motion the court denied, and the defendant excepted. The jury having rendered a verdict of guilty of murder in the first degree, the court pronounced sentence of death, and thereupon the defendant appealed to this court and obtained a stay of proceedings.

Counsel for defendant states five grounds on which he claims that the judgment below should be reversed. We will consider these *seriatim*. The first is, that the defendant "being incarcerated in the county jail at the time of the impanelling of the grand jury, and not having been produced in court, he was thereby deprived of his statutory right of challenging that body."

This claim is made under section 3 of the act of February 7, 1854, which provides that "a person held to answer a charge, may challenge the panel of the grand jury, or an individual grand juror." While this law has been of the statute book nearly twenty-seven years, it has never been the practice to

bring persons held to answer charges, into court at the time of the impanelling of the grand jury; nor do we know of any single instance in which that course has been adopted. It would obviously be a great inconvenience, and it is difficult to see what greater right a man already held to answer a charge has to be heard as to the composition of the grand jury, which is primarily to consider his case, than one whose case is brought before the same body during their session, without his having been previously held to answer.

No case has been cited showing that in any state or country has it been considered an absolute right on the part of an accused person in confinement, thus to be brought into court, so that the failure so to bring him would invalidate the further proceedings. The furthest that any of the cases mentioned goes, is to say that it was the practice in California thus to produce such prisoners.

In the absence of any law containing such requirement, and in view of the uniform practice in this territory, we do not think that this point presents an error which invalidated the indictment, and on account of which it should have been quashed. We cannot fail to recognize the wide distinction between a grand and a petit jury as to their functions and methods of procedure. The action of the former is simply preliminary; it is an inquiry by the grand inquest as to whether there is such probability from the statements made before them, which are usually *ex parte* of the guilt of a certain person, that he ought to be placed on trial. The importance of the feeling or action of any individual member, is not only less on account of this preliminary character of the proceedings, but also because a unanimous vote is not necessary in reaching a conclusion. It is not expected that in every instance, each grand juror shall be free from all previous knowledge of the cases, or even of the precise circumstances of the cases coming before them for official action; on the contrary, it is stated in the statute as to their

Territory of New Mexico v. Young et al.

powers and duties which is required by law to be read to every grand jury as a part of the charge of the court (chap. 70, sec. 9, General Laws), that, "If a member of the grand jury knows that an offense has been committed which is triable in the county, he must declare the same to his fellow jurors."

The second cause alleged for reversal is that the court should have sustained the challenge to Albino Samanego, interposed on the ground that he was not an owner of real estate. Upon the examination of this juror, he said, "I am the owner of a piece of real estate and house in the town of Colorado;" that as he was informed, his brother had entered the land at the land office at Las Mesilla; that under a general agreement among the people, one man entered a quarter section, and each quarter was divided in five parts, and each person took one-fifth part; that the justice of the peace divided up this quarter section, and gave him the part he occupied and claimed; that he had cultivated it for a number of years, had it now sown, and was in undisputed possession of it. He further testified, " The lot upon which the house I live in is built, belongs to myself; it (the house) is a jacal; I built it myself; it is not on the land I have mentioned, but is inside of the town of Colorado." With this uncontradicted evidence as to the ownership of the house and lot, we do not see from the record, how any question can arise as to the qualification of this juror as an owner of real estate; if there is anything to invalidate the testimony, the record fails to show it. Even were this not so, it would be far from clear that the juror was incompetent; the practice has been throughout the courts of the territory to construe the words "owner of real estate" quite liberally in this connection. The word "owner" does not necessarily imply that the person should be the holder of a fee simple. It is frequently used as equivalent to "possessor," and to designate the person in actual possession and control of

property. In proceedings for street openings and others of a similar character where the consent or action of a majority of the " owners " of the real estate affected was required, it has been held almost, if not quite uniformly, that the entire ownership of the fee was not necessary to constitute a person such as an " owner." In certain counties of New Mexico, owing to the large areas covered by land grants, or the fact that the land is nearly all owned by the United States, it would be practically impossible to obtain juries in many instances, if it was an essential qualification that each juror should be the owner in fee simple, by an absolute title of record, of real estate. This fact has always been patent, and well known to the legislatures of the territory, and we have a right, therefore, to consider it in endeavoring to arrive at a conclusion as to the legislative intent in the use of the word " owner." The object of the law was evidently to place upon juries those who were to some extent established in and identified with the territory, and who had a stake in the community. The possession of real estate was perhaps as good a criterion, with regard to their qualifications as could be suggested. But an absolute fee simple was not necessary for this, and the legislature certainly could not have intended to apply such a test in counties where through the peculiar situation of the land, it was practically impossible for many persons to obtain such a title. All the requirements embraced in the reason of the law are met by the actual occupation and undisputed possession of real estate, and this, we think, is the extent to which this qualification should be pressed, or the law requires. In the case before us, however, the statement of the juror, under oath, that the lot upon which the house in which I live is built, belongs to myself, uncontradicted and unimpeached, seems to settle the point that the challenge was rightfully overruled, even according to the strict interpretation of the law. The fact that the juror was

afterwards peremptorily challenged, it is, therefore, not necessary to consider in this connection.

The third error assigned is the overruling of the challenge interposed against Pedro Provencio, a juror, on the ground that he was not a citizen of the United States. We do not consider it necessary to discuss the subject of the citizenship of Provencio, although there seems but little doubt that he was competent, so far as that was concerned, because, even if he were not, the error was cured by the subsequent peremptory challenge of the proposed juror by the defendant, taken in connection with the fact that on the completion of the jury defendant had not exhausted his peremptory challenges. The law with regard to this seems to be pretty well settled, and is founded on common sense.

Some decisions go much beyond this and declare that even in case the defendant had not challenged the juror peremptorily, and such juror had therefore remained and acted on the jury, yet if the defendant had not exhausted his peremptory challenges, the juror was so remaining and acting by defendant's voluntary act, and so he was not prejudiced: *State v. Davis*, 41 Iowa, 311; *State v. Elliot*, 45 Iowa, 486.

Other decisions of highly respectable courts are to the effect that in case the defendant peremptorily challenges a juror, no previous action of the court in overruling a challenge of such juror for cause, can be ground for exception on appeal, even if the defendant may have exhausted all his peremptory challenges before the jury was completed. This is put on the ground that " the prisoner had the power and the right to use his peremptory challenges as he pleased, and the court cannot judicially know for what cause or with what design he resorted to them: *People v. Bodine*, 1 Denio, 310. He was free to use or not use them, as he thought proper, but having resorted to them, they must be followed out to all their legitimate consequences:" *Freeman v. People*, 4 Denio, 31; *Stewart v. State*, 13 Ark., 732, etc.; *Whelan*

*v. The Queen*, Canada Q. B., 28. Without going so far as either of these classes of decisions would lead us (for it is unnecessary in the present instance), there can be no doubt that in a case like that before us, where the defendant does not exhaust his peremptory challenges, and so is no way injured, by using the peremptory challenge for the proposed juror in question, if he chooses, after his challenge for cause has been overruled, to challenge peremptorily, he thus virtually and effectually wipes out any error which may have been committed in such overruling. He has ceased in any way to be prejudiced by the action of the court, and so has no reason for complaint.

The fourth error assigned by the defendant is "that the court exceeded its power and authority in instructing the jury that their verdict should be guilty of murder in the first degree or not guilty." The court so charged almost in the precise words above, and also stated to the jury, "there is no evidence before you tending to show that the killing of Henry F. Dwenger is murder in any other degree than the first degree of murder."

Had the court the right under the law so to charge? Sec. 23 of the recently enacted "Practice Act" (chap. 6, Laws of 1880), says: "The court shall not comment upon the weight of the evidence," and in the charge in this case, the court recognized this provision by instructing the jury: "You are the exclusive judges of the weight of the evidence and of its sufficiency to satisfy your minds as to the defendant's guilt." Is language such as is objected to by the defendant a "comment on the weight of evidence?" We think not. It is clearly competent for the court, at the end of the testimony for the prosecution, to say to the jury: "There is no evidence to sustain the indictment." If there is the least evidence, it becomes the province of the jury to take it into consideration and judge of its weight. They may give it credit or not; they may consider it of more importance than

the opposing evidence or not; they are the judges of the value to be attached to it and the weight it should have in determining their verdict. But if there is no evidence at all, there is nothing for them to consider and weigh. The statement by the court below that the verdict should be " guilty of murder in the first degree or not guilty," was exactly equivalent to the other statement, " There is no evidence before you tending to show that the killing is murder in any other degree than the first." Under our law, there are five degrees of murder, included in each of the degrees except the first and fifth, are several distinct kinds of homicide. No less than three different offenses, varying greatly in their character, equally constitute the crime of murder in the second degree, with different punishments; and the third degree includes no less than five distinct definitions. The reading of the entire law as to homicide to the jury in each case, would not only be useless, and as to some of the sections, absurd, but would tend to confuse their minds, and make it almost impossible for them to distinguish what the real crime as proved is, and to agree on a proper verdict. In case of a homicide in a street brawl, to read to the jury the law as to assisting in a suicide, killing an unborn infant child, acting as second in a duel, or administering drugs while intoxicated, would be palpably absurd; and in case of a murder by an ordinary pistol shot, to include in the charge, the sections as to killing in a cruel and unusual manner, would simply confuse and mislead. The judge has to discriminate somewhat, and the question is simply as to where the line should be drawn. It is within the power, and we think it is almost the duty of the judge presiding, to simplify and make clear the duties of the jury as far as possible, by eliminating from these degrees, which are in effect made by our law distinct crimes, any which the case certainly is not. He has the right to say when the evidence warrants, " There is no evi-

dence of the homicide charged being murder in the first degree," or "in the second degree," etc., as the case may be.

And it is the same thing virtually to say, " There is no evidence introduced tending to show murder in the second, third and fourth degrees," as to say, " This case, under the evidence, is either one of murder in the first or the fifth degrees." One form simply names the degrees which the alleged crime is not ; the other the degrees which under the evidence it may be. Of course, the judge who thus excludes certain degrees from the consideration of the jury, does so at his peril, that is to say, he should be absolutely certain that there is no testimony whatever which would make a verdict of one of these degrees possible, for if there is the least vestige of evidence, it is for the jury to determine its weight and effect ; and the slightest mistake of that kind would be error for which the appellate court would have to grant a new trial. But judiciously and carefully administered, such guidance by the court, is certainly advantageous to the administration of justice, especially under our complex murder law. In this case, we have carefully examined the evidence to ascertain whether there was anything whatever, however slight, on which a verdict of guilty of murder in any degree but the first could have been sustained, but find none. The instruction of the court below was warranted by the facts in the case as proved, and was not error.

It was suggested by counsel for the defendant that the law which provides that the jury shall " assess the punishment " in criminal cases, made this instruction improper. But that law has no bearing on this case whatever. That provision is simply to enact that the jury and not the judge shall fix the punishment to be inflicted within the limits established by law, where the law has left any option as to its extent. In nearly all of the older states this is done by the court. In such case the verdict of the jury simply states the offense of which they find the defendant guilty, as for example, "guilty

of murder in the fifth degree," and it would be for the judge, after considering all the circumstances, to assess the punishment of fine or imprisonment, as he thinks the ends of justice require, within the limits fixed by statute for that offense. But in this territory the legislature chose to leave the assessing of the punishment, within those limits, to the jury instead of the judge, so that the verdict has to include not only a statement that they find the accused guilty of such a crime or degree of crime, but also, added thereto, the punishment within the statutory limits, which they have thought it proper to impose in cases where it is not absolutely freed by the law itself. This is a matter whether done by judge or jury, that comes after the determination of the degree of crime of which the accused is guilty, and is subject to the limitation of law as to punishment for that degree, so the fact of its being devolved upon the jury in this territory rather than upon the judge, cannot have any influence upon the rights, duties and powers of either judge or jury in finding a verdict as to the crime itself.

The fifth point of the appellant's counsel is, that the motion for a new trial was improperly overruled, for the reason that the defendant, if guilty at all, was guilty only as an accessory after the fact. We see nothing in the testimony on which to base this argument, even if there is such a crime known to our law in this territory, as that of being " accessory after the fact " to a murder. Believing that no error has been shown in the proceedings, the judgment of the court below must be affirmed.