## SEARCY v. MILLER.

1. **Action**: COGNIZABLE IN EQUITY: LOST NOTE. An action to recover the amount of a note, of which the defendant wrongfully and fraudulently obtained, and still holds possession, is not cognizable in equity.

2. ——: ——: EQUITY. Other facts of this case considered and held not to be of such a nature as to render the case cognizable in equity.

3. ——: ——: PRACTICE. Where the only objection urged by the defendant in the trial court was that the case was designated as in equity, and therefore plaintiff was not entitled to a trial by jury, he cannot raise the objection here that no motion was made to transfer the case to the law docket. A specific objection having been interposed in the court below, none other can be considered here.

4. **Evidence**: COMPETENCY OF WITNESS: RELIGIOUS BELIEF. Upon cross-examination a witness was allowed to be questioned as to his belief in a Supreme Being and in a state of future rewards and punishments. *Held:*

   1. That the religious belief of a witness might be shown for the purpose of affecting the credibility of his testimony, and that Art. I, Sec. 4 of the Constitution did not prohibit such inquiry.

   2. That the want of such religious belief could not be established from the examination of the witness upon the stand. It must be shown, if at all, by his previous declarations voluntarily made. He cannot be required to divulge his religious opinions.

*Appeal from Keokuk Circuit Court.*

TUESDAY, DECEMBER 20.

ON the 5th day of July, 1880, the plaintiff commenced her action against the defendant, on a promissory note for $1,200, executed by the defendant to Civilla Jones, now Civilla J. Searcy, the plaintiff, dated February 23, 1874, due twelve months after date. The petition alleges that the note is in the possession of the defendant, who refuses to surrender it to plaintiff; that defendant obtained possession of the note fraudulently of plaintiff's husband, in the month of February, 1878, without value and without the knowledge or consent of plaintiff, and refuses to let plaintiff have, or to pay, or account for it; that the note, less credits, is plaintiff's property, and unpaid; that said note was given by defendant for money borrowed of plaintiff and was part of the purchase-money for certain real estate which the defendant still owns.

The plaintiff prays that the defendant be required to produce said note on the trial of the cause, and attach a copy thereof to his answer, that she have judgment for the amount due on said note, and a special lien on the land described, for the amount of said judgment.

In the second count of the petition plaintiff alleges that about November, 1875, she loaned defendant $30, which is due and unpaid.

Afterward the plaintiff filed an amendment to her petition, alleging that the fraud mentioned in the petition consisted in this: That defendant fraudulently and falsely pretended to plaintiff's husband that plaintiff was indebted to one Adams, and she might lose the note unless it was placed in defendant's hands for safe keeping; that said claim was only for a small amount and plaintiff was not liable thereon, and defendant induced plaintiff's husband to give up said note for a mere nominal consideration that he might cheat and defraud plaintiff

out of more than $1,600, all of which was without the knowledge, consent or ratification of plaintiff.

The defendant answered, admitting the execution of the note, that he has possession of it, and setting forth a copy thereof. He alleges, that in October, 1876, he paid plaintiff on said note, $200; and that in February, 1878, for a consideration named, plaintiff surrendered up to defendant said note, and defendant then paid the same and took up the note. To the claim set up in the second count of the petition the defendant pleaded the statute of limitations. The defendant sets up various items of counter-claim, on which he asks judgment against plaintiff for $1,000.

Afterward the defendant filed an amendment to his answer, alleging that at the time defendant obtained possession of the $1,200 note set forth in petition, plaintiff was indebted to one Adams, and fearing he would recover a judgment and levy on said note, for the purpose of hindering said Adams in the collection of said debt, she, for the sum of $25, sold said note and surrendered it up to the defendant for said fraudulent purpose, and is estopped from now claiming thereon. The plaintiff filed a reply denying liability on the items of counter-claim, and pleading settlement and payment therefor. The cause being reached for trial the plaintiff withdrew her prayer for a vendor's lien, and demanded a jury, to which the defendant objected on the ground that the case is in equity, and the plaintiff is not entitled to a jury. Against the objection of defendant the cause was submitted to a jury, to which the defendant objected.

The jury returned special findings and a general verdict for plaintiff for $1,865.66. The defendant appeals.

*Woodin & McJunkin*, for appellant.

*J. A. Donnell* and *Sampson & Brown*, for appellee.

DAY, J.—It is insisted that the court erred in submitting

the cause to a jury for trial as a law action. This involves a
determination of the question whether the cause
was properly at law or in equity. The clerk in
making up the calendar designated the cause as in
equity. The plaintiff made no such designation of the case,
the names of the parties to the action being followed by the
word " petition " as in ordinary proceedings, and not by the
words " petition in equity," as in equity proceedings. See
Code, § 2646. Does the petition seek relief which is of an
equitable character?

1. ACTION: cognizable in equity: lost note.

1. The plaintiff seeks to recover upon a note in the posses-
sion of the defendant. It matters not by what means the de-
fendant obtained possession of the note, if the note is still un-
paid. Independently of statute an action upon a lost note
must be in equity, to the end that the defendant may be in-
demnified against the chance of the note being found and
again asserted against him. No such reason applies where the
note is in the hands of the defendant. Our statute provides that
an action upon a lost note or bond may be by ordinary proceed-
ings (Code, § 2512); *a fortiori* may the action be at law where
the note sued upon is in the hands of the defendant. In 2 Par-
sons upon Notes and Bills, page 292, it is said: "If an action
is brought upon a note transferable by mere delivery, and the
plaintiff proves that he has lost it in some way, and then he
traces it into the possession of the defendant, there seems to
be no reason why he may not now, and even without notifying
the defendant to produce it, substitute a copy, on proof of
its contents, for the note itself, and sue it at law. For it can
never be negotiated as against the defendant, but by his own
act or concurrence. So, wherever an acceptor or other party
has wrongfully got possession of a bill of exchange or note,
an action may be had against him, as such party to the paper,
at common law." See authorities cited in note *t*, page 292,
and note *w*, page 293. In note *t* it is said that " a note in de-
fendant's possession cannot be sued in equity, because there is

a perfect remedy at law." In our opinion the fact that the plaintiff sues upon a note of which the defendant wrongfully and fraudulently procured, and still retains possession, does not make the cause cognizable in equity.

2. The plaintiff prays that the defendant be required to produce the note on the trial, and attach a copy of it to his answer. Under our system of procedure this can amount to no more than notice to produce the note, to the end that secondary evidence of its contents might be introduced. As an action for discovery in equity, this relief could not be demanded under the provisions of section 2523 of the Code. Besides, before this action was set down for trial at law, the defendant had answered, setting out a copy of the note sued on. The relief sought in this part of the prayer had been granted, and no issue upon it was pending. No equitable issue as to the right to the production of the note was to be tried, and the mere fact that the plaintiff asked that defendant be required to produce the note, did not make the whole case cognizable in equity.

3. In the original petition the plaintiff prayed the establishment of a lien upon real estate which the defendant purchased with the money for which the note was given. It must be conceded that if such lien could be established at all, it could only be done in equity. But when the case was called for trial, and before a jury was demanded, the plaintiff struck from the petition the prayer for a lien. We are, therefore, of opinion, that, when the cause was set down for trial, it ininvolved no issue cognizable upon the equity side of the court.

4. The appellant seems to rely in the argument upon the fact that plaintiff made no motion to transfer the cause to the law docket, as provided in section 2515 of the Code. But no objection to the action of the court was made in the court below upon that ground. The objection which the defendant made in the court below was, not that

the cause was upon the equity docket, and must be tried there, but that the *case was in equity*, and therefore the plaintiff was not entitled to a jury. A specific objection having been interposed in the court below, none other can here be considered. The case of *Henderson v. Legg*, 16 Iowa, 486, relied on by appellant, is not, it seems to us, in point. In that case notes and a mortgage were given up for a deed for land upon a false and fraudulent representation, that the land was unincumbered. The action was brought to rescind the contract of sale, to restore the original mortgage, and foreclose it. It was simply held that the action was equitable, and triable by the first method. The distinction between that case and the present is apparent.

In our opinion the issues involved in the case, at the time of its submission to a jury, were all cognizable at law, and the court committed no error, of which defendant can complain in ordering that it be tried by a jury.

II. One James Harbaugh was introduced as a witness by defendant, and gave important testimony. He was then cross-examined as follows: *Q.* Have you any religious belief? *A.*

4. EVIDENCE: competency of witness: religious belief. Well, it is very weak, if I have any religious principles. I am not much of a religious man. *Q.* Have you any belief in a state of future rewards or punishments? *A.* It is very faint. I am actually not a believer in these articles. *Q.* Have you any belief in a Supreme Being? *A.* I do not know what it is. Of course there is a first cause for something, but I do not know what it is; I do not know anything to believe upon it.

No objection was made to the first question or answer. The second and third were objected to as incompetent, irrelevant, and immaterial. The objection was overruled and defendant excepted.

In *State v. Elliott*, 45 Iowa, 486, it was held competent to prove as affecting the credibility of one whose dying declarations were introduced, that he was a materialist and believed

in no God or future conscious existence.   This decision is based unpon the ground that, whatever rendered a witness incompetent at common law, might be shown under section 3637 of the Code of 1873, to lessen his credibility.   This section is as follows:   " Facts which have heretofore caused the exclusion of testimony, may still be shown for the purpose of lessening its credibility."   This section first appeared as section 2389 of the Code of 1851, and afterward as section 3979 of the Revision.   Sections 35 of the Code of 1851, 38 of the Revision, and 53 of the Code of 1873, are as follows:   "The terms ' heretofore ' and 'hereafter, as used in this Code, have relation to the time when this statute takes effect."   The constitution of 1846, article 1, section 4, provides that no person shall be rendered incompetent to give evidence in any court of law or equity, in consequence of his opinions on the subject of religion. It is now claimed by appellant that the word " heretofore " as used in sections 2389, Code of 1851, 3979 of Revision, and 3637 of the Code of 1873, has reference to the law when the Code of 1851 took effect, as modified by the constitutional provision as above named, and that we were in error, in *State v. Elliott, supra,* in referring it to the state of the common law before that period.   So far as we have been able to discover, section 2388 of the Code of 1851, is the first statutory provision on the subject of evidence after the adoption of the constitution of 1846.   It provides that every human being shall be competent, except as otherwise declared, and is, in substance, but a redeclaration of the constitutional provision, that no person shall be rendered incompetent on account of his opinions on the subject of religion.   Having provided generally for the competency of all persons, the subsequent sections proceed to introduce an exception on the ground of interest, and nearly all the exceptions recognized at common law other than as to persons incompetent at common law, on account of the lack of a "religious sense of accountability to the Omniscient Being, who is invoked by an oath."   At the

time when section 2389 of the Code of 1851 was enacted, providing that "facts which have heretofore caused the exclusion of testimony may still be shown for the purpose of lessening its credibility," no case had found its way into the appellate court of this State in which the provisions of article 1, section 4 of the constitution, had been applied and enforced. Up to that time the decisions of courts in England, and in this country, had excluded as incompetent, witnesses who were "insensible to the obligations of an oath, from defect of religious sentiment and belief," and no different rule had been practically authorized by the adjudications of the Supreme Court of this State. Now, when the word "heretofore" was used in section 2389, we think it must have referred to facts which the courts had theretofore held should cause the exclusion of testimony, rather than to a constitutional provision intended to govern the action of courts, but which had never received judicial application. It is claimed that if section 2389 authorizes insensibility to the obligations of an oath to be shown to lessen the credibility of a witness, it is unconstitutional. It is to be observed, however, that article 1, section 4 of the constitution simply provides that a person shall not be rendered incompetent to give evidence, in consequence of his opinion on the subject of religion. It is not provided that the credibility of his evidence may not be lessened. The questions which were objected to sought to elicit the fact whether the witness had any belief in a state of future rewards or punishments, and any belief in a Supreme Being. In 1 Greenleaf on Evidence, section 369, it is said: "It may be considered as now generally settled in this country, that it is not material whether the witness believes that the punishment will be inflicted in this world or the next. It is enough if he has the religious sense of accountability to the Omniscient Being, who is invoked by an oath." In *Ormichund v. Barker*, Willis, 545, S. C., 1 Atk., 21, the proper test of a witness on the score of a religious belief was settled to be the belief of a

God, and that he will reward and punish us according to our deserts. See authorities cited in note 3 to section 369, 1 Greenleaf on Evidence. In admitting proof of the fact that the witness did not believe in a future state of rewards and punishments, the court erred.

III. The questions under consideration were allowed to be asked of the witness on cross-examination. This was not proper. In 1 Greenleaf on Evidence, section 370, it is said: "The State of his religious belief, at the time he is offered as a witness, is a fact to be ascertained. The ordinary mode of showing this is by evidence of his declarations, previously made to others, the person himself not being interrogated. The want of such religious belief must be established by other means than the examination of the witness upon the stand. He is not to be questioned as to his religious belief, nor required to divulge his opinion upon that subject in answer to questions put to him while under examination. If he is to be set aside for want of such religious belief; the fact is to be shown by other witnesses, and by evidence of his previously expressed opinions voluntarily made known to others." *Commonwealth v. Smith*, 2 Gray, 516. See Greenleaf on Evidence, 12th edition, page 417, note 2, and page 418, note 1. We discover no error in the instructions. It is claimed the verdict is excessive, but as the judgment must be reversed on other grounds, this objection need not be considered.

                                                    REVERSED.