## THE STATE v. PIERCE.

**Malicious Threats**: TO EXTORT MONEY: FACTS NOT CONSTITUTING. An indictment for malicious threats with the intent to extort money is not sustained by evidence that defendant represented to certain persons that he had a warrant to search their place of business for intoxicating liquors, and that he intimated that for money paid him he would neglect to serve the warrant, and that he received the bribe and intimated that no search would be made.

*Appeal from Polk District Court.*—HON. MARCUS KAVANAGH, Judge.

FILED, DECEMBER 19, 1888.

The State v. Pierce.

THE defendant, was indicted and convicted for malicious threat. He now appeals to this court.

*A. A. Haskins,* for appellant.

*A. J. Baker,* Attorney General, for the State.

BECK, J.—I. The indictment charges the crime of which defendant is accused in the following language: "The said Frank Pierce, on the fifteenth day of September, A. D. 1887, in the county of Polk aforesaid, did then and there wilfully, maliciously, unlawfully and feloniously threaten by verbal communication to W. R. Trotter and J. O. Cole to search the premises of W. R. Trotter, J. O. Cole and B. D. Miller, the same being a drug-store situated in the 'Hotel Goldstone,' in East Des Moines, Iowa, and to seize the intoxicating liquors therein kept, which said liquors were then and there the property of said W. R. Trotter, J. O. Cole and B. D. Miller, which said seizure would injure the property and business of the said W. R. Trotter, J. O. Cole and B. D. Miller; with the wilful, unlawful and felonious intent to extort money from them, the said W. R. Trotter, J. O. Cole and B. D. Miller, contrary to the form of the statute in such case made and provided, and against the peace and dignity of the state of Iowa." It is shown by the evidence that defendant at the time of the act alleged in the indictment was a constable, and Miller, Cole and Trotter were partners in the drug business. In our opinion, there is not one word of evidence found in the abstract tending in the remotest degree to prove the threats or threatenings alleged in the indictment. The evidence which it is claimed tended in that direction is as follows: Cole testified that "along about the middle of September, I had a conversation with Mr. Pierce on the bridge. He said: ' Jim, I have a search-warrant for your place over there.' I said, ' Is that so?' and he replied, ' Yes, sir.' He walked on, and left me, and near the center of the bridge he stopped,

and waited until I caught up with him, and he said, 'Jim, I hope you will appreciate this.' I said, 'Certainly;' and that is all there was to it." Miller testified that "about the fifteenth of September Mr. Cole reported to the firm that he had had a conversation with Frank Pierce. Within a day or so after that I met Pierce on Mulberry street, right north of the court-house. I shook hands with him, and I said to him, 'Frank, we are told that you have a warrant for our place.' Says I: 'We are doing a straight, legitimate business, and we do not want our stuff carried off. We do not want the report to go out that we have been searched, because it will hurt our business.' 'Well,' he says, 'if you fellows can come up and do something for me, it is all right. I am not in this thing for my health.'" Trotter gave the following evidence: "I was in the drug business,—a member of the firm of Trotter, Miller & Cole. Last September, Cole reported to me that Frank had a warrant for our place, and I reported it to Miller. About that time I met Frank on East Locust street, and passed the time of day with him. He said he would be around to our place in a little while. He came around, perhaps an hour afterwards. Dr. Miller and I were standing in the front part of the store. I gave Frank ten dollars. He remained a few minutes, and went out. I had a subsequent meeting and conversation with Mr. Pierce about three weeks afterwards. I met him in the north end of the court-house hall, and gave him twenty dollars that I had with me, and that I had agreed to give him; and I told him we had now made him two payments, and that he could not do that so often; that he must let us off easy. He said he guessed we would not be bothered any more; to do what was right, and go ahead." No threats are shown by this testimony which are contemplated by the statute prescribing the offenses under which the indictment was found. It is in the following language: "If any person, either verbally or by any written or printed communication, maliciously threaten to accuse another of crime or offense, or to do any injury to the person or property of another, with intent thereby

to extort any money or pecuniary advantage whatever, or to compel the person so threatened to do any act against his will, he shall be punished by imprisonment in the penitentiary not more than two years, or by fine not exceeding five hundred dollars." Code, sec. 3871. The witnesses do not testify that defendant threatened "to accuse the parties named of crime, or to do them or their property injury. They show that defendant negotiated with them for a bribe, for the omission on his part to discharge his official duty, which is a crime punishable under Code, section 3948. The foregoing evidence, which is denied by defendant in his testimony, shows that the witnesses were quite readily overcome by the temptation offered them by defendant. We need not pursue the inquiry suggested by defendant's counsel that they are *participes criminis* as to the offense really committed, as it has nothing to do with the decision of this case.

Other questions arise upon objections to various rulings of the court below. They need not be considered, as the judgment in the case, for the error pointed out, must be reversed, and our conclusion thereon will operate as a final disposition of the case.

REVERSED.