STATE OF IOWA, Appellee, v. C. P. BROWNING, Appellant.

**Malicious threats to extort:** INDICTMENT: DUPLICITY. The statute
relating to malicious threats to accuse another of an offense, or
to do an injury to his person or property, with intent to extort
money, covers several methods whereby the crime may be com-
mitted, but the acts constitute but one offense although stated
disjunctively; and it is proper for an indictment to charge the
crime as having been committed by one or all of the methods
stated in the statute.

**Same:** SUFFCIENCY OF INDICTMENT. An indictment charging that de-
fendant unlawfully, maliciously and feloniously threatened to do in-
jury by threatening to forcibly arrest and place in jail the parties
named, with intent to extort money, sufficiently charges that the
threat was of an unlawful arrest, over the objection that it might
have been lawful; as the gist of the crime is the threatened in-
jury to person or property with the view of gaining some pe-
cuniary advantage, and it is immaterial whether the accused might
or might not have made a lawful arrest, where the crime is com-
mitted in that manner.

**Witnesses:** OATHS. No particular form of oath to be administered
to a witness is prescribed, but if of such character as to be
regarded by the witness as binding upon his conscience it is suffi-
cient, although he may regard some other form as more solemn.

**Same:** FORM OF OATH: OBJECTION. Objection to the form of an oath
must be made previous to its administration or it will be deemed
waived.

**Same:** DISCREDITING EVIDENCE. A witness can not be asked whether

he considers some other form of oath than that administered as more binding upon his conscience, for the purpose of discrediting him.

**Malicious threats:** EVIDENCE. On this prosecution for making an unlawful threat of arrest with a view of extorting money, defendant claimed that the parties making the charge were conducting a house of illfame and that one of them had offered sexual intercourse with accused just prior to the threatened arrest. *Held,* that evidence that the one claimed to have offered unlawful intercourse was sick at the time and the number and ages of her children was competent on that issue; but if this were not so no such prejudice resulted as would justify a reversal because of its admission.

**Malicious threats to extort:** SUFFICIENCY OF INSTRUCTION. Where the offense charged is simply malicious threats to extort, the element of bribery is not involved, and an instruction that the offense is complete if malicious threats were made with intent to extort money, or to compel the person thus threatened to do an act against his will, whether the person gave any money or not, was proper, and not subject to the objection that it does not sufficiently discriminate between bribery and malicious threats.

**Same:** PROOF OF CONSPIRACY: INSTRUCTION. On a prosecution of several defendants for malicious threats of arrest in order to extort money, proof of conspiracy without alleging the same in the indictment is proper, for the purpose of making each defendant liable for the acts of the other. And the language of the instruction in this instance is not objectionable as making defendant liable for the acts of his codefendants, pursuant to a conspiracy between them alone, but requires the finding of a conspiracy between the accused and all or part of his codefendants, to make their declarations made in his absence admissible against accused.

**Same:** UNLAWFUL SEARCH: INSTRUCTION. Where it appeared that defendant had no warrant authorizing him to search the residence of the person he is claimed to have threatened with arrest, any error in instructing that accused, as a special police officer, had no authority to serve a search warrant was not prejudicial.

**Same:** UNLAWFUL ARREST: INSTRUCTION. A private person has the right to make an arrest as a peace officer for a felony committed or attempted in his presence: So that an instruction that the accused, a special police officer, was not a peace officer and had no greater authority to make an arrest than a private person would have had, was not prejudicial to the accused, where it appeared that as a private person he had the same authority to make an

arrest as a peace officer would have had under the same circumstances.

**Malicious threats to extort:** BRIBERY: DISTINCTION. There is a distinction between malicious threats with intent to extort and bribery. If one whose duty it is to make an arrest suggests that for a price he will not do so, or if after arrest he offers to release the accused upon the payment of money or the doing of some act, this is not the crime of making malicious threats; but if one threatens to accuse another of a crime unless he pays money or does something else against his will, for the purpose of extortion, the crime is a malicious threat although it be followed by an arrest.

**Malicious threats:** EVIDENCE. The evidence in this prosecution for malicious threats with intent to extort money is held sufficient to support a verdict of guilty.

*Appeal from Polk District Court.*—HON. LAWRENCE DE GRAFF, Judge.

WEDNESDAY, NOVEMBER 15, 1911.

DEFENDANT with two others, was indicted for the crime of making malicious threats to extort money. Upon trial to a jury he was found guilty and given an indeterminate sentence to the penitentiary. He appeals. *Affirmed.*

*H. L. Bump* and *Stewart & Hextell,* for appellant.

*George Cosson, Attorney General,* and *John Fletcher, Assistant Attorney General,* for the State.

DEEMER, J.—Defendant was indicted for the crime defined in section 4767 of the Code, which reads as follows: "If any person, either verbally or by any written or printed communication, maliciously threaten to accuse another of a crime or offense, or to do any injury to the person or property of another, with intent to extort any money or pecuniary advantage whatever, or to compel the person so

threatened to do any act against his will, he shall be imprisoned in the penitentiary not more than two years or be fined not exceeding five hundred dollars.

The charging part of the indictment is as follows: "The said C. P. Browning, R. B. McKee, A. W. Rice, on or about the 14th day of August, A. D. 1910, in the county of Polk, in the state of Iowa, did willfully, unlawfully, maliciously, and feloniously threaten to do injury to the person of Fredia Cassman and Jacob Cassman, by threatening to forcefully arrest and place in jail the said Fredia Cassman and Jacob Cassman, with the intent then and there on the part of C. P. Browning, R. B. McKee, and A. W. Rice, to extort money from the said Fredia Cassman and Jacob Cassman aforesaid."

It seems to cover all the elements of the offense as described in the statute. It alleges that the said defendant maliciously and unlawfully threatened to do injury to the persons of others, naming them, by threatening to forcefully arrest them and to put them in jail, with the intent on the part of the defendants to extort money from them against their wills. It does not allege that the threats were verbal; but this is the fair inference from the indictment and sufficiently appears from the language used.

I. The statute, as it reads, covers several methods whereby the crime may be committed; but these acts constitute but the one offense, although stated disjunctively.

1. MALICIOUS THREATS TO EXTORT: indictment: duplicity.

In framing an indictment under such a section, it is proper to charge the crime in any or all of the methods defined by the statute or to state its commission in one or all of the prohibited methods. The offense aimed at is malicious threats to extort. These threats may be to accuse another of a crime or to do an injury to the person or property of another, one or both, with intent to extort money or gain some pecuniary advantage, or to compel the person threatened to do an act against his will, and one

committing such acts or any of them is guilty of the offense charged.

The chief complaint made of the indictment is that it does not charge that the threat was of an unlawful arrest, that the threat might have been lawful or of a lawful arrest, and that this is not negatived in the indict-

2. SAME: sufficiency of indictment.

ment. We can not agree with this construction. The indictment does charge that defendant unlawfully, maliciously, and feloniously threatened to do injury by threatening to forcibly arrest and place in jail the parties named with intent to extort money. If the words used had been to accuse another of a crime, instead of to forcibly arrest, the indictment would have been in the language of the statute. This statute makes no express exceptions. That is to say, neither officers nor private persons are excepted from its terms, and it is apparent that one may be guilty under this section although he had the lawful right to arrest, or the duty perhaps of accusing another of a crime. It is misuse of these powers for malicious purposes and with intent to extort money which is aimed at, and one could not under any circumstances lawfully do the thing which defendant is charged with doing. That the indictment is sufficient, see *State v. Young,* 26 Iowa, 122; *State v. Lewis,* 96 Iowa, 286; *State v. Waite,* 101 Iowa, 377; *State v. Debolt,* 104 Iowa, 105; *Kennedy v. Roberts* 105 Iowa, 521.

II. Two of the witnesses for the state were Jews, and after taking the orthodox oath, which he stated he regarded as binding on his conscience, was asked by defendant's counsel as to whether or not there

3. WITNESSES: oaths.

was any other form of oath which he regarded as of higher or greater sanctity or of greater solemnity or more binding upon him than the oath taken. Objections to the questions were sustained and of this complaint is made. At common law no particular form of oath was required. Any form was sufficient which was

considered by the witness as binding on his conscience. *Gill v. Caldwell,* 1 Ill. 53; *Reg. v. Serva,* 2 Car. & K. Eng. 53, 1 Cox, Crim. Cases, 292.

The witnesses in this case did not object to the form of oath, and each stated that it was binding on his conscience. This was sufficient, although he might perhaps have regarded another form as more solemn, or more binding upon him, than the oath taken. In such cases the law does not deal with comparisons, but is satisfied if the witness regards the oath as binding upon his conscience. *Doss v. Bicks,* 11 Humph. (Tenn.) 431.

Even were this not so, no objection was made to the form of oath administered, and the questions propounded were evidently framed for the purpose of discrediting the

4. SAME: form of oath: objection.

witness. It is the universal rule that objection to the form of oath must be made previous to its administration, or it will be deemed waived. *State v. Davis,* 186 Mo. 533, (85 S. W. 354); *Gonsales v. State,* 31 Tex. 495. For the purpose of discrediting the witness the inquiries were inadmissible.

5. SAME: discrediting evidence.

*Searcy v. Miller,* 57 Iowa, 613; *Dedric v. Hopson,* 62 Iowa, 563; also, Const. article 1, section 4. If one understands the nature of an oath and assumes to take it as binding upon him, he is a competent witness. Code, section 4601; *State v. Rainsberger,* 71 Iowa, 746. See, also, *Pullen v. Pullen,* (N. J.), 4 Atl. 82.

III. The state was permitted to show, over defendant's objection, that Mrs. Cassman was sick at the time it is claimed the threats were made, and also to show the

6. MALICIOUS THREATS: evidence.

number and ages of the children of Mr. and Mrs. Cassman. In view of the developments upon the trial, we are constrained to hold these matters material and competent. It is claimed, at least inferentially, that the Cassmans were running a house of ill fame, that Mrs. Cassman had offered herself for

unlawful sexual commerce just prior to the acts complained of, and that she was in fact a prostitute. Upon these questions the testimony complained of had some relevancy and materiality.

But, even if this were not so, no such prejudice resulted to defendant as would justify a reversal. Some other rulings on the admission and rejection of testimony are complained of which we do not regard as of sufficient moment to justify separate consideration. It is enough to say that no prejudicial error appears.

IV. Many complaints are made of the charge as given by the trial court, and it is most strenuously argued that the testimony is insufficient to justify the verdict. In this connection it is argued that defendant's offense, if any, was bribery. As to this latter claim more hereafter.

The instructions most vigorously complained of read as follows:

(6) You are further instructed that the 'offense,' as defined by law and as charged in the indictment, is complete if malicious threats were made, as charged in the indictment, to the persons named therein, to wit, Fredia Cassman and Jacob Cassman with intent to extort money or to compel the persons so threatened to do an act against their will whether the person so threatened gave any money or not.

(7) You are instructed that under the law where a conspiracy is once established, and until the completion and consummation of the object in view, if the conspiracy lasts that long, every act and declaration of one consiprator in pursuance of the original concerted plan, done and in reference to any furtherance of the common object even in the absence of the other conspirator, is in contemplation of the law the act and declaration of them all, and is therefore evidence against each, and all are deemed to assent to or commend what is said or done by any of them in furtherance of the common object of the conspiracy.

In this case the court has admitted testimony as to the act and declarations of persons whom the state claims were coconspirators. Some of these acts and declarations were done and made not in the presence of the defendant.

Under the law herein given you will reject any testimony in regard thereto unless you find that the defendant, C. P. Browning, conspired and confederated with R. B. McKee and W. A. Rice or either of them, and that the statements and acts not made or done in the presence of the defendant, C. P. Browning, were in fact made by a person so conspiring and confederating with said defendant.

You are further instructed that a 'conspiracy is a combination between two or more persons by concert of action to accomplish some criminal or unlawful purpose, or some lawful purpose by a criminal or unlawful means. A conspiracy is complete when the conspirators enter into the agreement, and it is immaterial whether the agreement has been carried out or not.

You will carefully inquire and determine whether it is proven that a conspiracy existed between the defendant, C. P. Browning, and R. B. McKee and W. A. Rice, or either of them, and in so considering you are entitled to take into account all the evidence showing when and where and under what circumstances the defendant and said McKee and Rice or either of them were together, what was said by and between the said parties at the time or times they were together, if you find the fact so to be, and if you find the evidence that the defendant, Browning, and said McKee and Rice, or either of them, did so conspire, then you may consider the declarations and statements of the said McKee and Rice or either of them, if any were made, during the existence of such conspiracy in pursuance of or in furtherance of such conspiracy, in the absence of said defendant, Browning, as bearing upon the guilt or innocence of the said defendant, Browning; but, if such conspiracy is not proven, then you must not consider any statements, acts, or declaration of the said McKee and Rice, or either of them, not made or done in the presence of the said defendant, Browning. . . .

(9) A statute of this state defines an 'arrest' to be the taking of a person into custody when and in the manner authorized by law and may be made at any time of any day or night. It is also provided that an arrest may be made by a peace officer or by a private person. It is further provided that a peace officer may make an arrest in obedience to a warrant delivered to him, and without a warrant

for a public offence committed or attempted in his presence or where a public offense has in fact been committed and he has reasonable ground for believing that the person to be arrested has committed it. The statute further provides that a private person may make an arrest: First, for a public offense committed or attempted in his presence; and, second, when a felony has been committed and he has reasonable grounds for believing that the person to be arrested has committed it.

You are further instructed that the following persons are defined and designated by the statute as peace officers: First, sheriffs and their deputies; second, constables; and, third, marshals and policemen of cities and towns. A statute of this state further provides that a mayor of a city may in cases of emergency appoint such a number of special policemen as he may think proper, reporting such special appointment to the council at its next regular meeting, all such special appointments to continue in force until such meeting unless sooner terminated by the mayor.

Another statute of this state relative to search warrants and proceedings thereon defines a search warrant as an order in writing in the name of the state signed by a magistrate directed to a peace officer commanding him to search for personal property and bring it before the magistrate. It is further provided by statute that a search warrant may in all cases be served by any of the officers mentioned in its direction, but by no other person except in aid of the officer upon his requisition; he being present and acting in its execution.

Evidence has been introduced upon the trial of this case relative to the authority under which the defendant, Browning, acted at or about the time that it is alleged the malicious threats to extort took place. You are instructed that any evidence bearing upon the question of the authority of the defendant to act as a peace officer and in the execution of the service of the alleged search warrant at 319 East Fifth street, city of Des Moines, Polk county, Iowa, at the time and place in question, is to be considered by you as bearing upon the intent with which the defendant acted as substantially charged in the indictment, if you find he did so act, and for no other purpose.

You are instructed that as a matter of law the said

defendant was not at the said time and place a peace officer within the meaning of the law for the purpose of making service of search warrants duly issued from a court of competent jurisdiction. You are instructed, however, that as a private person he had authority to make an arrest for a public offense committed or attempted in his presence, or when a felony had been committed and he had reasonable ground for believing that the person to be arrested had committed it. You are instructed that the legal propositions herein stated and the evidence which has been introduced relative to the acts of the defendant under claim of authority as an officer, and what he did as shown by the evidence under the claim of being an officer, are not to be considered by you except so far as the same may throw light upon the intent with which the defendant acted, if you find he did act as substantially charged in the indictment.

In this connection the trial court was asked to give the following:

No. 1. The court instructs the jury that the only crime charged in this indictment is that of malicious threat to extort money, and that if from the evidence you believe that the defendant, C. P. Browning, did not have the specific intent to extort money from Jacob Cassman and Fredia Cassman, or either of them, then it is your duty to find this defendant not guilty of the crime charged in this indictment, notwithstanding that the motive and intent under which he did act at the time he made said arrest may have been reprehensible. . . .

No. 3. You are instructed that the threat to extort money must have been a malicious threat, and that malice is an evil disposition of the mind manifest in one of two ways: First, by personal hatred or ill will toward another; and, second, by a reckless and wanton disregard for the rights of others. And that if from the evidence you believe that when the defendant, C. P. Browning, arrested Jacob Cassman and Fredia Cassman, or either of them, he did so under the honest belief that the said Jacob Cassman and Fredia Cassman, or either of them, were conducting a house of prostitution or a disorderly house, then he was justified in making said arrest, and you must find he acted without malice within the meaning of the law.

No. 4.   You are instructed that the defendant, C. P. Browning, was, on the 13th and 14th of August, A. D. 1910, a duly and legally appointed police officer of the city of Des Moines, with power to make arrests.

No. 5.   You are further instructed that a peace officer may make an arrest in obedience to a warrant delivered to him, and without a warrant for a public offense committed or attempted in his presence, or where a public offense has in fact been committed and he has reasonable ground for believing that the person to be arrested has committed it.

Going now to the complaints of those given in the order of the instructions quoted, we find that the principal point made of the first instruction copied, to wit, No. 6,

7. MALICIOUS THREATS TO EXTORT: sufficiency of instruction.

has already been answered in our suggestions relative to the sufficiency of the indictment. One point made against it is that it does not sufficiently discriminate between bribery and malicious threats to extort; that one assuming to be an officer or in fact one might be guilty of either or both offenses in the same or connected transactions must be apparent.   The instruction itself has reference to malicious threats as distinguished from bribery, and there was no error in giving it.

The instruction relating to conspiracy, No. 7, was not improper.·  There was ample testimony to justify reference

8. SAME: proof of conspiracy: instruction.

to the subject, and it was not necessary that a conspiracy be alleged in the indictment.   Proof of a conspiracy was proper in order to hold defendant for the acts done by any of his codefendants or the other persons who may have acted with him.

The language of the latter part of the instructions is criticised because it is said that a jury might thereunder have found a conspiracy between McKee and Rice, defendant not being a party thereto, and yet by the language of the instruction held for anything either Rice or McKee may

have done in furtherance of their unlawful ends. We do not so read the instruction. The effect of it is to say that a conspiracy must be found between defendant and McKee and Rice, or between defendants and either McKee or Rice. The language will bear no other interpretation. The use of the word "either" in the instruction is full of significance, and to give any other construction to the language used one must abandon all grammatical rules and say in effect that the jury was justified in giving the instruction an interpretation which it will not reasonably bear.

Counsel's contention that a conspiracy is not defined is met by a reading of the instruction itself.

In the ninth instruction the court said that defendant was not a peace officer within the meaning of the law, and that he had no authority to serve a search 9. SAME: unlawful search: warrant. This is bitterly complained of for instruction. the reason that it is an incorrect statement of the law. The question is largely a moot one, for, as will be seen, the defendant had no search warrant, nor did he serve one on the Cassmans.

But in Foster v. Clinton Co., 51 Iowa, 544, and Twinam v. Lucas Co., 104 Iowa, 231, opinions were filed which tend to support the position taken by the trial court. In the first case it was held that a special constable was not a peace officer, and in Twinam v. Lucas Co. it was held that a deputy marshal was not a peace officer in such a sense that he was entitled to compensation from the county for his services. In the opinion it is said: "The statutes do not define the duties of deputy marshals, nor do they fix their compensation. It may be assumed, however, that his duties are the same as those of the marshal. Abrams v. Ervin, 9 Iowa, 87. The marshal is a peace officer, and it is his right, as well as his duty, to arrest vagrants. This his deputy might also do, in the absence of any showing to the contrary." But it was further held that a deputy marshal was not a peace officer as that term is used in section

4109 of the Code of 1873, which is now section 5099 of the Code of 1907.

Section 652 of the Code provides, in substance, that the mayor of a city may in cases of emergency appoint such number of special policemen as he may think proper, reporting such appointment to the city council at its next regular meeting, and that such appointment shall continue in force until such meeting unless sooner terminated by the mayor. Pursuant to this section the mayor made the following appointment of the defendant:

Appointment of Special Police.    Mayor's Office, City of Des Moines, Polk County, Iowa.    Des Moines, Iowa, July 6, 1910.    On application Chief of Police ———, C. P. Browning is hereby appointed a special policeman at Des Moines and directed to report to the city marshal for instructions.    The said C. P. Browning is to make no charge, nor is he to receive any compensation whatever from the city of Des Moines for service under this appointment. This appointment may be revoked any time at the will of the mayor.    James R. Hanna, Mayor.

There is no other showing of revocation of this appointment than the following written across the face of the paper:    Canceled by Mayor, October 27, 1910.

The times of meeting of the council of the city of Des Moines are not shown, and, if any inferences are to be made, they are that the appointment continued until canceled.    There was also introduced in evidence a number of search warrants issued by one Conroy, a justice of the peace in and for Polk county, dated on the 12th and 13th days of August, 1910, and addressed to any peace officer of the state.    None of these described Cassman's place, however, nor is there any return showing service of any by a search of that place.    One of these warrants, which described a place nearest to the one occupied by Cassman, was returned by defendant as a special policeman "not served." So that in no event is it material to determine whether or

not defendant had authority to serve a search warrant. Even if he had such authority, he had no warrant which gave him authority to search Cassman's place, and the trial court did not err in stating that he had no authority to serve a search warrant. If any error be found, it is in the statement that defendant was not a peace officer and that he had no greater authority in making arrest than a private person.

Abstractly considered, this may be an erroneous view of the law; but, conceding the error, no prejudice resulted, if under the facts he had as a private person the same authority to make an arrest as a peace officer would have had under the same circumstances.

10. SAME: unlawful arrest; instruction.

A private person has the same right to make an arrest as a peace officer when a public offense has been committed or attempted in his presence. See Code, sections 5196, 5197.

The only power a peace officer has which is not possessed by a private person is that a peace officer may arrest where any public offense has in fact been committed and he has reasonable ground for believing that the person to be arrested has committed it, while a private person can only arrest in such cases where the offense is a felony. A "felony" in this state is an offense which is or may be punished by imprisonment in the penitentiary. Now under the testimony the only offense which the Cassmans or either of them was guilty of was adultery, which is a felony, or the keeping of a house of ill fame, which is also a felony. Even if the offense of Cassmans were prostitution, that, too, was a felony. The trial court in effect so instructed and properly told the jury that this was a collateral matter which might throw light upon the intent with which the defendant acted. There was no error in the ninth instruction prejudicial to the defendant, and it follows that the court did not err in giving the instructions asked by defendant in so far as they announce rules contrary to those already expressed.

V.   The chief proposition relied upon for appellant is that the testimony shows the crime, if any, committed by him, was bribery, or an offer to take a bribe, and great reliance is placed upon *State v. Pierce,* 76 Iowa, 189.   That there is a distinction between these offenses is manifest, and proof of one will not support the other.   The soliciting of a bribe after an arrest or a threat of arrest is not extortion in a legal sense.   Elliott on Evidence, section 2879, and *State v. Pierce, supra.*

11. MALICIOUS THREATS TO EXTORT: bribery: distinction.

But that one with authority to make an arrest may be guilty of threats to extort, even though an arrest is finally made, is equally clear.   The arrest in such cases may be a part of the scheme to extort.   *Com. v. Murphy,* 12 Allen (Mass.) 449.   Much depends, of course, upon the facts of each particular case.   If an officer whose duty it is to make an arrest suggests that for a price he will not make an arrest, as in *State v. Pierce, supra,* the offense is not the making of malicious threats to extort money, but an offer to accept a bribe.   But if one threatens to accuse another of crime unless he pays a sum of money, or does something else against his will for the purpose of extortion, this is a malicious threat, although it be followed by an arrest.   But if one, after having arrested another, offers to release him upon the payment of money or upon the doing of some other thing, this is not the crime of making malicious threats.   These distinctions are plain, and the trial court pointed out the elements of the offense charged in its third, fourth, fifth, and sixth instructions, which are too long to be set out in this opinion.   The distinctions we have attempted to draw were not set out in the charge as given by the court, but the defendant did not ask that any such instructions be given.   The instruction as to arrest has already been quoted, and in other parts of the charge the necessary elements of the offense were properly defined.

There is no error in the charge of which defendant may justly complain.

VI. The close question in the case is the sufficiency of the testimony to justify the verdict. Some of the witnesses for the state were disreputable, and the stories told by one or more of them are hardly believable, and yet it appears that defendant and some of his associates were trespassers when they entered the Cassman home, and that the purpose of some of them in going there was not the highest. To a full understanding of the case it seems necessary to recite some more of the facts. It seems that defendant, who claimed to be a private detective, and who held an appointment from the mayor, as before stated, was employed by what is known as the Anti-Saloon League of Des Moines to ferret out and discover places where intoxicating liquors were being sold contrary to law. The object of this inquiry may have been directly for the good of society or indirectly to secure testimony upon which to remove certain peace officers or policemen of the city. Some, if not all, of defendant's associates were also employed for the same purpose. Two men, one by the name of Rice and another bearing the name of Van Nostrand, were also engaged in this same work as were McKee and Crowell; the two latter being employed by defendant. These parties, or some of them, were suspicious of Cassman's place, which was known as 319 East Fifth street, and a search warrant, issued August 13, 1910, against 311 East Fifth street, was placed in Browning's hands for service. That warrant commanded any peace officer to search the place described for intoxicating liquors. Rice and Van Nostrand went to the Cassman place once or twice in the early evening of August 13th, but were told to come again for the house was then being watched. This latter statement is denied by the Cassmans, who stated that Rice came to the house, but that he was inquiring for a room to rent. However this may be Rice

12. MALICIOUS THREATS: evidence.

again appeared on the morning of August 14th at about· the hour of 4 a. m., was admitted to the house and was found in what was known as an alcove room with Mrs. Cassman. How he came to be there is a matter of dispute. He says that he was there by appointment to have intercourse with her according to an arrangement with her husband, while the Cassmans say that he came there to occupy the room as a lodger and that Mrs. Cassman arose from her own bed to prepare the one for Rice in the alcove so that he might occupy it when he (Rice) seized her and threw her on the bed. Whatever the truth this defendant and his associates secured access to the house shortly after Rice had entered it and as they entered found Rice with his coat off in the alcove and Mrs. Cassman, but partially dressed, either in the alcove or just emerging therefrom. Immediately upon the defendant's entering Cassman's rooms, Rice demanded of the Cassmans that they return him $4 in money; that being the amount which it is claimed he paid Mrs. Cassman for the privilege of occupying the bed with her. Some controversy was had over the payment of this sum or any other, and the testimony for the state is that both Rice and defendant, and perhaps another, demanded the return of the money, or if it was not returned that they would arrest both the Cassmans and take them across the river, meaning either to the county or city jail. The Cassmans were obdurate, and, after an ineffective search of the house for intoxicating liquors was made, they were taken by the defendant and his associates over the river, and, after an ineffectual attempt to find the justice who issued the search warrant, the Cassmans with Rice were taken to the county jail and there turned over to the jailer, who kept them until 9 or 10 o'clock in the morning, when they were. discharged. Some things were done toward their future arrest and punishment, the full extent of which is not disclosed by the testimony. There is also some testimony to the effect that, in addition to the demand for the

return of the $4, defendant or some of his associates also said that no arrest would be made if the Cassmans returned the $4 and also the further sum of $10. The testimony also discloses that, after the Cassmans were taken to the west side of the river, the defendant or some of his associates offered to release the Cassmans if they would pay the $4 and the $10.

Such are the broad outlines of the case. The defendants each and all deny that any demands were made upon the Cassmans. They say that they went to the house for the double purpose of searching it for intoxicating liquor, believing that the warrant then in Browning's hands covered the place, and for the additional purpose of ascertaining whether or not the Cassmans were conducting a house of ill fame. There is enough in the testimony to justify the conclusion that all of the parties named were acting in conjunction, and that Rice was to make arrangements for entering the house and for such accommodations as would be proof indisputable that the house was a disorderly one, and that within a few minutes after he finally succeeded in gaining admission his associates should enter in the hope and belief that he would be found in a compromising position with some of the inmates. That he did gain admission and was in a suspicious situation with Mrs. Cassman when his associates entered is too clear for argument, and that he did pay Mrs. Cassman some money, the amount being in dispute, we have no doubt. We are also convinced that when his associates entered he demanded the return of the money on the theory that he had had no consideration therefor. There was considerable parleying over this matter, and finally the Cassmans were arrested and eventually lodged in the county jail.

The sharp dispute is upon the proposition as to whether or not defendant or any of his associates with whom he was acting demanded the return of the money paid by Rice or other sums and threatened that if they (the Cassmans) did

not return it they would be arrested and taken to jail. This is denied on the one hand and affirmed on the other. There is testimony to show that the demands, whatever they may have been, were before any arrest had been made and were subsequently reiterated as a condition for the release of the Cassmans from the arrest. Now while, as we have said, the witnesses for the state are disreputable, and some of their testimony almost unbelievable, the weight and sufficiency of the testimony was for a jury. If defendant had offered no testimony, a good case for the state would have been made out. By the introduction of testimony they produced a conflict in the evidence, and it was for the jury to settle this conflict and to determine the very truth of the matter. The case is not one where we should say that there is not sufficient testimony to justify a conviction without arrogating to ourselves a power which we do not possess. A reading of the record, however, satisfies us that the case is one which may properly be considered by the executive department of the state or the board of parole, and upon an independent investigation, which we cannot make, it may appear that such injustice has been done as to call for relief. Some of the testimony indicates that plaintiff's witnesses as a rule are of questionable character, and represent that strata of society which is a menace to any community. On the other hand, defendant and his associates resorted to questionable and highhanded methods to accomplish their ends. They had no authority to search the house, and their entry therein was a clear trespass. They deliberately planned whatever was done in the hope of discovering something wrong, and one of defendant's associates is quite as deeply in the mire as the Cassmans are in the mud. Sitting as an appellant court, we have no right to say, in the face of the verdict of the jury, that the case made for the state is a tissue of falsehood and perjury. That question was for the jury.

Our conclusion is that the judgment must be, and it is, *affirmed*.